KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
MICHAEL J. KUMP (SBN 100983)
  mkump@kwikalaw.com
JEREMIAH T. REYNOLDS (SBN 223554)
  jreynolds@kwikalaw.com
808 Wilshire Boulevard, Third Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Defendants MRC II Distribution Company, L.P., MRC II Holdings L.P., Oaktree Entertainment Inc., George Nolfi and Michael Hackett

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| LAURA ARCHER DICK COELHO, AS TRUSTEE OF THE PHILIP K. DICK TESTAMENTARY TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>MRC II DISTRIBUTION COMPANY, L.P., a Delaware limited partnership; MRC II HOLDINGS L.P., a Delaware limited partnership; OAKTREE ENTERTAINMENT, INC., a Delaware corporation; GEORGE NOLFI; and MICHAEL HACKETT,<br><br>Defendants. | Case No. CV 11-8913 ODW (JCGx)<br><br>Assigned to the Hon. Otis D. Wright II<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND THROUGH SEVENTH CLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(1) and 12(B)(3); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 19, 2011<br>Time: 1:30 p.m.<br>Courtroom: 11<br><br>Complaint Filed: October 27, 2011 |

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 19, 2011, at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom 11 in the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California 90012, the Honorable Otis D. Wright, II presiding, Defendants MRC II Distribution Company, L.P., MRC II Holdings L.P., Oaktree Entertainment, Inc., George Nolfi and Michael Hackett (collectively, "Defendants") will appear and move the Court for an Order dismissing the Second, Third, Fourth, Fifth, Sixth and Seventh Claims for Relief (together, the "State Law Claims") in the Complaint filed by Plaintiff Laura Archer Dick Coelho, As Trustee Of The Philip K. Dick Testamentary Trust, on the grounds that:

(1) The Court does not have jurisdiction over the Trust's State Law Claims because they do not share a common nucleus of operative facts with its First Claim for Declaratory Relief, the sole claim giving rise to federal jurisdiction;

(2) The Court should decline to exercise supplemental jurisdiction over the State Law Claims, because they raise questions of state law which substantially predominate over the First Claim for Relief, over which the Court has original federal question jurisdiction; and the interests of economy, fairness, convenience, and comity will best be served if the State Law Claims are decided by the Los Angeles County Superior Court (Fed.R.Civ.P. 12(b)(1) and 28 U.S.C. §1367(c)(2)); and

(3) The parties expressly agreed that disputes arising under their agreement were to be determined by the courts of the State of California, and enforcement of the parties' agreed forum selection clause would not be unreasonable or unjust. (Fed.R.Civ.P. 12(b)(3)).

Defendants' Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Scott Tenley, all papers

1 and pleadings on file herein, and on such other oral and documentary evidence as
2 the Court may receive at or before the hearing on this Motion.
3     **PLEASE TAKE FURTHER NOTICE** that this Motion is made following
4 the conference of counsel pursuant to Local Rule 7-3, which took place on
5 November 9, 2011.

6 DATED: November 18, 2011    KINSELLA WEITZMAN ISER KUMP
    & ALDISERT LLP

By:    /s/ Michael J. Kump
    Michael J. Kump
    Attorneys for Defendants
    MRC II Distribution Company, L.P., MRC
    II Holdings L.P., Oaktree Entertainment,
    Inc., George Nolfi and Michael Hackett

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................. 1

II. RELEVANT ALLEGATIONS OF PLAINTIFF'S COMPLAINT ................... 2

    A. Background Regard Philip K. Dick and The Trust. ................................ 2

    B. The Terms of the Parties' Agreement. ..................................................... 3

    C. Plaintiff's Claims for Relief. ..................................................................... 4

III. PLAINTIFF'S STATE LAW CLAIMS ARE UNRELATED TO ITS COPYRIGHT CLAIM AND SHOULD BE LITIGATED IN STATE COURT ............................................................................................................... 6

    A. Legal Standard Governing This Motion. ................................................ 6

    B. This Court Lacks Supplemental Jurisdiction Over Plaintiff's State Law Claims. ............................................................................................... 6

        1. The state law claims and federal copyright claim do not arise from a common nucleus of operative facts. ........................ 7

        2. The state law claims substantially predominate over the federal copyright claim. ................................................................ 10

IV. THE PARTIES CONTRACTUALLY AGREED TO LITIGATE THEIR STATE LAW CLAIMS IN CALIFORNIA STATE COURT ........... 12

V. CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Cal. Dept. of Water Resources v. Powerex Corp.*,
 533 F.3d 1087 (9th Cir. 2008) ..................................................................... 7

*DeAsencio v. Tyson Foods, Inc.*,
 342 F.3d 301 (3d Cir. 2003) ....................................................................... 11

*Executive Software North America, Inc. v. U.S. District Court*,
 24 F.3d 1545 (9th Cir. 1994) ................................................................. 7, 10

*Faulkner v. Nat'l Geographic Soc.*,
 211 F. Supp. 2d 450 (S.D.N.Y. 2002) ......................................................... 9

*Feezor v. Tesstab Operations Group, Inc.*,
 524 F.Supp.2d 1222 (S.D. Cal. 2007) ....................................................... 11

*Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*,
 131 F.3d 1336 (9th Cir.1997) .................................................................... 12

*In re Methyl Tertiary Butyl Ether Products Liability Litigation*,
 613 F.Supp.2d 437 (S.D.N.Y. 2009) ......................................................... 11

*John Wiley & Sons v. Visuals Unlimited, Inc.*,
 2011 WL 5245192, *4 (S.D.N.Y. Nov. 2, 2011) ......................................... 9

*Li v. Chertoff*,
 482 F.Supp.2d 1172 (S.D. Cal. 2007) ......................................................... 6

*Lyon v. Whisman*,
 45 F.3d 758 (3d Cir. 1995) .......................................................................... 7

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
 858 F.2d 509 (9th Cir.1988) ...................................................................... 12

*Marx v. U.S.*,
 96 F. 2d 204 (9th Cir. 1938) ........................................................................ 8

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Int'l Wire Grp., Inc.*,
 2003 WL 21277114, at *4 (S.D.N.Y. June 2, 2003) ................................... 9

*Safe Air for Everyone v. Meyer*,
 373 F.3d 1035 (9th Cir. 2004) .............................................................. 2, 6

*The Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ................................... 12

*United Mine Workers v. Gibbs*,
 383 U.S. 715 (1966) .............................................................................. 7, 10

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) .................................................................. 2, 6

**STATUTES**

17 U.S.C. § 23 ...................................................................................................... 8

28 U.S.C. § 1367 ....................................................................................... 7, 10, 11

Fed. R. Civ. P. 12 .................................................................................................. 6

Fed. R. Civ. P. 12(b)(1) .................................................................................. 6, 13

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This action, filed preemptively during settlement discussions by Plaintiff The Philip K. Dick Testamentary Trust (the "Trust"), through its Trustee Laura Archer Dick Coelho, concerns only a <u>single narrow issue giving rise to federal court jurisdiction</u>: namely, whether the short story "Adjustment Team" ("the Story") written by the late science fiction author Philip K. Dick is in the public domain. Unfortunately, in a transparent effort to gain settlement leverage in the dispute concerning the validity of the Trust's purported copyright, the Trust has chosen to also include six state law contractual and equitable claims that are <u>wholly unrelated</u> to the issue of whether the Story is in the public domain. Accordingly, Defendants MRC II Distribution Company, L.P., MRC II Holdings L.P., Oaktree Entertainment, Inc., (collectively, "the MRC Defendants") George Nolfi and Michael Hackett (collectively, "Defendants") hereby move for an Order dismissing the Second, Third, Fourth, Fifth, Sixth and Seventh Claims for Relief. Those state law claims can be refiled by the Trust in the Superior Court of the State of California, as provided for in the parties' forum selection clause.

The single, narrow federal issue presented in this action – *i.e.*, whether the Story fell into the public domain in 1982 – does not require a jury, requires only focused discovery, and will likely be resolved on summary judgment. In contrast, the Trust's state law contractual claims revolve around the accounting issue of whether the Trust is presently contractually entitled to a share of "net profits" in the MRC Defendants' movie, "Adjustment Bureau." The Court does not need to consider or determine <u>any accounting issues</u> to determine the validity of the Trust's copyright in the Story. There is no evidence that is relevant to the issue of the validity of the Trust's copyright that is also relevant to the Trust's state law claims.

The state law accounting claims will require fact and expert discovery that have nothing to do with the copyright issues. To the extent there is a trial, it would

1
MOTION TO DISMISS COMPLAINT

be unnecessary and wasteful to try the Trust's declaratory relief claim regarding its purported copyright at the same time as the state law accounting claims. The two sets of issues are distinct. Furthermore, there is an available state forum for resolution of the Trust's state law claims. Accordingly, the interests of judicial economy, convenience, fairness and comity dictate that this Court should decline to exercise its supplemental jurisdiction over the Trust's state law claims.

In addition, the parties expressly consented to "the jurisdiction of the courts of the State of California" in their governing agreement. This clause memorializes the parties' intention and agreement that claims that do not involve exclusive federal jurisdiction must be litigated in state court.

Accordingly, Defendants respectfully request that the Court dismiss the Trust's state law claims (Second to Seventh Claims) because the Court lacks supplemental jurisdiction to hear them or, alternatively, the Court should decline to exercise supplemental jurisdiction over the state law claims because they predominate over the narrow federal copyright claim.

## II. RELEVANT ALLEGATIONS OF PLAINTIFF'S COMPLAINT

### A. Background Regard Philip K. Dick and The Trust.

Defendants dispute many of the factual allegations set forth in Plaintiff's Complaint. For purposes of this motion, however, Defendants accept them as true, as supplemented by the various documents to which Plaintiff refers, but fails to attach to its Complaint. *See, e.g., Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Plaintiff's Complaint alleges the following:

Science fiction author Philip K. Dick died in 1982. (Compl. ¶ 33.) The Trust was formed to "maintain, promote, and develop the creative works of" Mr. Dick. (Compl. ¶ 19.) Ms. Coelho is the trustee of the Trust. (*Id.*) Since Mr. Dick's death, several of his numerous works have been adapted for film, including *Blade Runner, Total Recall,* and *Minority Report.* (Compl. ¶ 33.)

B. **The Terms of the Parties' Agreement.**

In 2001, Nolfi negotiated with the Trust to acquire the rights to develop the Story as a feature film. (Compl. ¶ 36.) Nolfi and the Trust entered into an Agreement dated May 23, 2001 (the "Agreement") by which the Trust (as "Owner") granted Nolfi (as "Purchaser") an exclusive one-year option to purchase the motion picture rights to the Story (defined in the Agreement as the "Property") for $25,000. (Compl. ¶ 37.) A true and correct copy of the Agreement is attached to the Declaration of Scott Tenley as Exhibit A.[1]

In addition to the various payment provisions, under the Agreement, the Trust made certain representations and warranties to Nolfi, including a representation that the Trust owned the copyright to the Story:

> Owner hereby represents and warrants that:
>
> (a) That Owner is the sole owner of all rights (as set forth below) herein granted and has full power and authority to grant said rights to Purchaser; that none of the rights herein granted to Purchaser hereunder have been granted, encumbered, or otherwise disposed of in any manner to any person, firm or other entity; . . . that Owner has not done or omitted to do and will not do or omit to do any act or thing by license, grant or otherwise, which will or may impair or encumber any of the rights herein granted or interfere, [the previous comma should come out unless it's actually in the original] with the full enjoyment of said rights . . .
>
> (c) The Property is not in the public domain in any jurisdiction of the world and Owner has taken all steps necessary to ensure that the Property is protected under all applicable copyright laws . . . .

(Tenley Decl. Ex. A, ¶ 3 (a), (c).)

---

[1] The Agreement provided for two one-year extensions of the option at a price of $25,000 each (the "First Extension Period" and "Second Extension Period"); and a "Set-up Bonus" to be paid to the Trust if Nolfi entered into an agreement for development and/or production of a motion picture based on "Adjustment Team" with a U.S. motion picture studio or a "mini studio." (Complaint ¶ 37; Tenley Decl. Ex. A, ¶¶ 1(b)-(d).) The Agreement further spelled out alternative pricing for purchase of the rights specified in the Agreement after exercise of the option, based on the amount of the final overall approved budget of the picture. (Tenley Decl. Ex. A, ¶ 2(a)).

The Agreement further provides that it is to be interpreted, construed and governed by California law, and that the parties "consent to the jurisdiction of the courts of the State of California." (*Id.* ¶ 21.)

Nolfi is expressly authorized to assign and transfer the Agreement "or all or any part of its rights hereunder to any person, firm or corporation, without limitation and Purchaser shall be relieved of its obligations hereunder . . . ." (Tenley Decl. Ex. A, ¶ 14.) Nolfi and the Trust entered into a series of extensions of the Agreement that extended the period during which Nolfi could option the rights to the Story. (Compl., ¶¶ 40-41.)

On June 19, 2009, MRC notified the Trust that Nolfi had assigned all of his rights in the Agreement to MRC's Oaktree production subsidiary, that Oaktree was exercising the option and purchasing the motion picture rights in the Story, and was wiring $1,400,000 to the Trust. (Compl. ¶ 43.) Oaktree subsequently transferred its rights under the Agreement to MRC Distribution, or to MRC Holdings which transferred the rights to MRC Distribution. (*Id.* ¶ 44.)

The movie "The Adjustment Bureau" was released in 2011. (Compl. ¶ 11.) The MRC Defendants later discovered that the copyright for the Story was actually in the public domain. (Compl. ¶ 13.)

C. **Plaintiff's Claims for Relief.**

The Trust's Complaint asserts the following <u>seven</u> Claims for Relief:

The <u>First Claim for Relief</u> against the MRC Defendants and Nolfi for "Declaratory Relief Regarding Status of Copyright Rights" requests a declaration that the copyright in the Story was not in the public domain at the time the Agreement was entered, and is not in the public domain "in the United States or any other international territories." (Compl. ¶¶ 73, 74.)

The <u>Second Claim for Relief</u> against the MRC Defendants and Nolfi for "Declaratory Relief Regarding Rights Under Contract" requests a declaration of the Trust's purported rights under the Agreement, including that the Trust's

representations and warranties therein were accurate. (*Id.*, ¶77.)

The <u>Third Claim for Relief</u> against the MRC Defendants and Nolfi for "Breach of Contract" alleges breach of the Agreement by these Defendants, "including by failing to issue any accounting statements to the Trust, failing to make required payments and demanding the return of prior payments, failing to negotiate in good faith regarding an appropriate net profits definition, and repudiating any obligation to the Trust under the Agreement on a going forward basis," for which the Trust seeks at least $500,000. (*Id.*, ¶¶ 47-50, 81-82.)

The <u>Fourth Claim for Relief</u> against the MRC Defendants and Nolfi for "Money Had and Received" seeks the recovery of amounts allegedly received by these Defendants under the Agreement "for the use and benefit of the Trust," amounting to at least $500,000. (*Id.*, ¶¶ 84-87.)

The <u>Fifth Claim for Relief</u> against all Defendants for "Quantum Meruit" is based on services allegedly provided at the request of all Defendants by the Trust and its beneficiaries, Mr. Dick's adult children, the purported value of which is "no less than the guaranteed and contingent compensation owed to the Trust under the Agreement," which Defendants allegedly partially paid but now seek to have returned. (*Id.*, ¶¶ 61-66, 89-91.)

The <u>Sixth Claim for Relief</u> against all Defendants for "Unjust Enrichment" is based on services allegedly provided to all Defendants by the Trust and its beneficiaries, with the expectation of compensation therefor, the purported value of which is "no less than the guaranteed and contingent compensation owed to the Trust under the Agreement." (*Id.*, ¶¶ 61-66, 95-98.)

The <u>Seventh Claim for Relief</u> against the MRC Defendants and Nolfi for "Accounting" seeks an accounting by these Defendants of amounts allegedly due to the Trust under the Agreement and as contingent compensation. (*Id.*, ¶¶ 100-101.)

## III. PLAINTIFF'S STATE LAW CLAIMS ARE UNRELATED TO ITS COPYRIGHT CLAIM AND SHOULD BE LITIGATED IN STATE COURT

### A. Legal Standard Governing This Motion.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for lack of jurisdiction. A challenge under Rule 12(b)(1) may be either facial or factual. In a facial attack, the defendant contends that the complaint's allegations are insufficient on their face to invoke federal jurisdiction; in a factual attack, the defendant disputes the truth of the allegations allegedly conferring federal jurisdiction. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a factual attack, the court may review evidence outside the complaint without converting the motion to one for summary judgment, and need not presume the truth of the plaintiff's allegations. *Id.* In such a case the plaintiff must provide evidence to satisfy its burden of establishing subject matter jurisdiction. *Id.*

Conclusory allegations which are contradicted by documents referred to in the Complaint need not be accepted by the Court on motion under Rule 12(b)(1). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Likewise, legal conclusions cast in the form of factual allegations need not be accepted. *Id.*

When a motion to dismiss for lack of subject matter jurisdiction is filed along with another Rule 12 motion(s), the court should consider the Rule 12(b)(1) motion first. *Li v. Chertoff*, 482 F.Supp.2d 1172, 1175-1176 (S.D. Cal. 2007).

### B. This Court Lacks Supplemental Jurisdiction Over Plaintiff's State Law Claims.

The Court should not exercise supplemental jurisdiction over the Trust's state law claims on the grounds that the state law claims and federal copyright claim do not involve a common nucleus of operative facts, the state law claims predominate,

and the interests of economy, fairness, comity and convenience will be best served if the state law claims are decided by the Superior Court.

### 1. The state law claims and federal copyright claim do not arise from a common nucleus of operative facts.

In *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), the U.S. Supreme Court authorized the federal courts to exercise jurisdiction over state law claims when "[t]he state and federal claims . . . derive from a common nucleus of operative fact," the claims are so related that a plaintiff would ordinarily be expected to try them all together in one proceeding, and the federal issues are "substantial." *Executive Software North America, Inc. v. U.S. District Court*, 24 F.3d 1545, 1552 (9th Cir. 1994), *overruled on other grounds, Cal. Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008), *citing Gibbs*, 383 U.S. at 725.

Supplemental jurisdiction over a pendent state claim is available under 28 U.S.C. § 1367 if three requirements are met. *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995). Plaintiff must <u>first</u> allege a federal claim that has "substance sufficient to confer subject matter jurisdiction on the court." *Id.* (*quoting Gibbs*, 383 U.S. at 725. <u>Second</u>, the plaintiff must fulfill the "nexus requirement" by demonstrating that the federal claim and the pendent state claim "derive from a common nucleus of operative facts." *Id.* <u>Third</u>, the nature of the claims must be such that the party would "ordinarily be expected to try them all in one judicial proceeding." *Id.*

The Trust's sole federal claim (First Claim for Declaratory Relief) seeks a declaration as to whether the Story is in the public domain. (Compl. ¶¶ 72-74.) Its remaining six contract and quasi-contract claims all involve issues of contract interpretation and contractual performance, centering on the Trust's purported present entitlement to "net profits" in the movie "Adjustment Bureau." There is no factual or logical nexus between the Trust's federal copyright claim and its state law contract and quasi-contract claims.

To resolve the issue of the validity of Trust's federal copyright in the Story (as alleged in the Trust's First Claim), the Court will need to determine when the Story was first published. The Trust concedes the Story was <u>first published</u> on July 29, 1954, but alleges on "information and belief" that Dick did not authorize this first publication and, therefore, it does not constitute a "publication" for copyright purposes. (Compl., ¶¶ 53-56.) But there is not a single piece of admissible evidence demonstrating that Dick did not authorize the 1954 publication (as indicated by the Trust being forced to make the allegation concerning Dick's lack of authorization "on information and belief"). (*See id.*, ¶ 54.) The Trust does not and cannot allege that Dick ever filed a lawsuit against the publisher of the Story for copyright infringement, or that there are any letters or demands from Dick demanding that the publisher cease and desist its publication of the Story in 1954.

Indeed, the Trust <u>admits</u> that the Story's publication in 1954 was done with the express authorization of Dick's literary agent, Scott Meredith (*see id.*, ¶ 54), who served as Dick's agent from 1952 until Dick's death in 1982. There is simply no admissible evidence indicating Dick did not authorize the 1954 publication. As such, the Story fell into the public domain in 1982 when the Trust failed to file a timely copyright renewal registration within 28 years after the 1954 publication.[2]

---

[2] The duration of the story's copyright is governed by former Section 23 of the Copyright Act, which provided that the copyright would "endure for twenty-eight years from the date of first publication." *See Marx v. U.S.*, 96 F. 2d 204, 206 (9th Cir. 1938) (quoting 17 U.S.C. § 23). Even under the various amendments to the Copyright Act, the twenty-eight year period for this copyright could be extended only by the filing of a timely renewal. As succinctly stated by a New York District Court:

> Under the 1909 Act, which applies for purposes of determining duration of copyright to works that were first published prior to January 1, 1964, an author was entitled to an initial twenty-eight year copyright term, which expired unless the copyright was renewed by the author or his statutory successors during the final year of the initial term. Failure to make a renewal application during the twenty-eighth year resulted in the work entering the public domain. The rule was (and for our purposes, is) undeniably strict.

(footnote continued)

The Trust's contract-based and equitable Third through Seventh Claims do not involve <u>any evidentiary issues</u> that overlap the issue of whether Dick authorized the publication of the Story in 1954. The Third through Sixth Claims are all based upon the contractual relationship between the parties, and whether there has been a breach of contractual terms relating to the MRC Defendants' accounting obligations to the Trust. For example, whether the 1954 publication of the Story was authorized is <u>irrelevant</u> to whether the film "Adjustment Bureau" reached "breakeven," as defined in the Agreement (¶2(b)(i)) (Compl. ¶¶ 47-50), or has earned any "net profits" as defined in the Agreement (¶2(c)) (Compl. ¶¶ 47-50, 78-82). Likewise, the issues of what, if any, services were allegedly provided by the Trust or its representatives, including the author's children, to Defendants in connection with "Adjustment Bureau" and whether there was compensation owed for those services (Compl. ¶¶ 61-67; 88-98) are irrelevant to the issue of whether the Story is in the public domain.

The Trust further seeks a declaration in its Second Claim for Declaratory Relief that it made accurate representations and warranties that it owned the rights to the Story and the Story was not in the public domain. (Compl. ¶¶ 76-77.) As an initial matter, this claim for declaratory relief is wholly improper because – as explained fully in Defendants' concurrently filed Motion to Dismiss under Rule 12(b)(6) – declaratory relief "is not intended to be used by parties who seek a declaration of non-liability to preemptively defeat tort claims already accrued by past wrongful conduct." *John Wiley & Sons v. Visuals Unlimited, Inc.*, 2011 WL 5245192, *4 (S.D.N.Y. Nov. 2, 2011) (*citing Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Int'l Wire Grp., Inc.*, 2003 WL 21277114, at *4 (S.D.N.Y. June 2, 2003)). The Trust is clearly attempting to obtain a declaration to exonerate itself

---

*Faulkner v. Nat'l Geographic Soc.*, 211 F. Supp. 2d 450, 463-464 (S.D.N.Y. 2002).

from a tort it already committed. The Court should not exercise supplemental jurisdiction over a claim that is defective on its face.

Furthermore, the question of whether the Story is in the public domain would <u>not</u> ordinarily be tried at the same time as the issue of whether the Trust's representations and warranties were accurate or material. The Court can resolve the narrow, federal issue of whether the Story is in the public domain on summary judgment or in a non-jury trial. In contrast, the contractual issues of whether the Trust's representations and warranties were accurate and material will require a jury trial.

Accordingly, the Court does not have jurisdiction over the Trust's Second to Seventh Claims because they do not arise out of the same facts as the federal copyright claim, and would not ordinarily be tried together.

### 2. <u>The state law claims substantially predominate over the federal copyright claim.</u>

In *Gibbs, supra*, the Court held that a district court could appropriately decline to exercise jurisdiction over pendent state law claims when "it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought," and when the state and federal claims should be separated for reasons "independent of jurisdictional considerations, such as the likelihood of jury confusion." *Gibbs*, 383 U.S. at 726-727; *see also* 28 U.S.C. § 1367(c) (courts may decline to exercise supplemental jurisdiction when the state law claim "substantially predominates over the claims over which the district court had original jurisdiction."). Whether supplemental jurisdiction should be exercised in such circumstances "is informed by whether remanding the pendent state claims comports with the underlying objective of most sensibly accommodat[ing] the values of economy, convenience, fairness, and comity." *Executive Software*, 24 F.3d at 1557 (citing cases).

"In general, the question of whether state law predominates must be answered

by looking to the nature of the claims set forth in the pleading and by determining whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims." *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 613 F.Supp.2d 437, 442-43 (S.D.N.Y. 2009) ("*MTBE*") (citation omitted). "[A] court must examine the scope of the state and federal issues, the terms of proof required by each type of claim, the comprehensiveness of the remedies, and the ability to dismiss the state claims without prejudice to determine whether the state claim constitutes the real body of the case," in a case-specific analysis. *DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301, 312 (3d Cir. 2003).

For example, in *Feezor v. Tesstab Operations Group, Inc.*, 524 F.Supp.2d 1222 (S.D. Cal. 2007), the district court dismissed plaintiff's state law claims even though they were "almost identical" to her federal claims because the state law claims potentially gave rise to significant damages, while the only federal remedy available was injunctive relief. Under the circumstances, "[g]iven the disparity in terms of comprehensiveness of the remedy sought, state law claims substantially predominate over the ADA for purposes of [Section 1367(c)(2)]." *Feezor*, 524 F.Supp.2d at 1225. Given the greater comprehensiveness of the state law remedies, "fairness dictates that the claims are more appropriately adjudicated in state court." *Id.* at 1225-1226 (further determining that the case presented novel and complex state law issues that weighed in favor of dismissing them so that a state court could address them; "needless decisions of state law should be avoided as a matter of comity"). Accordingly, the claims were dismissed without prejudice.

Even if the Court were to find a factual nexus between the Trust's copyright claim and its state law claims, the Court should still decline to exercise jurisdiction because it is plain that the Trust's six state law claims predominate over its single, narrow federal copyright claim. The federal copyright claim will require only focused, narrow discovery as to whether the 1954 publication of the Story was

11
MOTION TO DISMISS COMPLAINT

authorized. In contrast, the state law claims involve potentially complicated accounting issues to determine whether the Trust is entitled to "net profits." The state law claims potentially require an examination of the knowledge of the Trust and its beneficiaries regarding representations and warranties in the Agreement, as well as potentially the "materiality" of those terms.

The state law claims also seek greater and different relief than the copyright claim. The copyright claim will solely require the Court to issue a declaration concerning the validity of the copyright for the Story. The state law claims include requests for accounting, restitution, "compensatory damages," "monetary damages," and a declaration of rights and obligations under the Agreement. The Trust's state law claims present jury issues, whereas the copyright claim can and should be decided by the Court as a matter of law.

For all of the foregoing reasons, the Court should decline to exercise supplemental jurisdiction over the Trust's state law claims, which should be dismissed without prejudice.

## IV. THE PARTIES CONTRACTUALLY AGREED TO LITIGATE THEIR STATE LAW CLAIMS IN CALIFORNIA STATE COURT

Forum-selection clauses are presumed valid and will be enforced unless the resisting party demonstrates it would be unreasonable or unjust to do so under the circumstances. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (holding that it is "incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 (9th Cir.1988). Enforcement is unreasonable where it would "contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *The Bremen*, 407 U.S. at 15; *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir.1997).

Here, the parties to the Agreement expressly agreed to "the jurisdiction of the courts of the State of California" in the event of a dispute, and further agreed that the Agreement was to be "interpreted, construed and governed in all respects under the laws of the State of California applicable to agreements executed and intended to be wholly performed within" the State. (Tenley Decl. Ex. A, ¶21.) Each of the Trust's Second through Seventh claims for relief are based on and derived directly from the Agreement.

The foregoing clause makes clear that the parties intended to litigate state law claims in California state court. Further, the Trust cannot demonstrate that enforcement of the parties' agreed forum selection clause would be unreasonable or unjust.[3] Accordingly, the Second, Third, Fourth, Fifth, Sixth and Seventh Claims for Relief should be dismissed without prejudice so that they may be presented to the Superior Court in the first instance.

## V. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant their motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3), and dismiss Plaintiff's Second, Third, Fourth, Fifth, Sixth and Seventh Claims for Relief without prejudice.

DATED: November 18, 2011

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

By: /s/ Michael Kump
  Michael J. Kump
  Attorneys for Defendants
  MRC II Distribution Company, L.P., MRC II Holdings L.P., Oaktree Entertainment, Inc., George Nolfi and Michael Hackett

---

[3] A motion to enforce a forum selection clause is properly brought under Rule 12(b)(3). *See Argueta v. Banco Mexicano, S.A.* 87 F3d 320, 324. (9th Cir. 1996).

13
MOTION TO DISMISS COMPLAINT